**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**MICHAEL EASON,**

      **Plaintiff,**

      **vs.**                                **Case No.:3:08-cv-935-J-16MCR**

**CONTRACT CONNECTION, INC.,**
**TODD KROHN and MARLEE KROHN,**

      **Defendants.**

_____/

## ORDER

Before the Court is Defendants' Motion to Dismiss (Dkt. 13, the "Motion"). Plaintiff, Michael Eason ("Eason") opposes the Motion. (Dkt. 15). On January 29, 2009, the Court held a preliminary pretrial conference to address some of the issues raised in the Motion. After considering the parties' positions and arguments, the Court finds that the Motion (Dkt. 13) will be **GRANTED in PART and DENIED in PART**.

## I.    Factual and Procedural Background

Contract Connection, Inc. ("Contract Connection") is a Florida based company that markets and sells playground equipment in the southeastern United States, including North Carolina. It is the Court's understanding that Contract Connection is now insolvent. Defendant, Todd Krohn ("Mr. Krohn") is the owner and president of Contract Connection. Defendant, Marlee Krohn ("Mrs. Krohn") is an officer of Contract Connection and manages its daily business activities. Eason is a resident of North Carolina and a former employee of Contract Connection.

In early October 2003, Eason met with Mr. Krohn in North Carolina to discuss Eason's potential employment with Contract connection. Following that meeting, Mr. Krohn faxed Eason

a Representative Employment Contract (the "Contract," Dkt. 1, Ex. A) setting forth the terms of Eason's employment. Section J of the Contract ("Section J") provides that "[t]his document shall be construed for all purposes as a Florida document and shall be interpreted and enforced in accordance with the laws of the State of Florida." On October 8, 2003, Eason signed the Contract in North Carolina and began working for Contract Connection.

Under the Contract, Eason was assigned an exclusive territory in North Carolina in which he was to solicit orders for playground equipment and provide on-going service to those purchasing the equipment. In return Eason was to receive a base salary and a 40% commission on the gross profits of each order, or 40% of the net commissions paid by the factory. Section D of the Contract ("Section D") reads that commissions due would be paid the month after receipt of the full payment from the customer or receipt of commission payment in full from the factory.

Section H of the Contract ("Section H") provides that the Contract will be ongoing until "canceled by written certified mail notification with 30 days notification from the date mailed." Section H also provides that within 14 days of termination, notification of a list of all unpaid commissions or commissions on projects sold by the employee that may become payable within 30 days after the notice of cancellation will be paid to the employee upon receipt of commission or payment from the customer.

Eason claims that when he was paid a commission, he never received the full commission of 40% as required under the Contract. In addition, Eason claims that Contract Connection still owes him approximately $131,775.19 in unpaid commission payments. On July 30, 2008, Eason met with Mr. Krohn to discuss the unpaid commissions. During that meeting, Eason claims that Mr.

Krohn told him 1) to find another job and 2) that Contract Connection would not pay Eason any outstanding commission payments.

Following his termination, Eason filed a three-count complaint (Dkt. 1, the "Complaint") alleging breach of contract (Count I) and violations of the North Carolina Wage and Hour Act, N.C. Gen Stat. §§ 95-25 *et al.* (Counts II and III). Eason later filed an amended complaint. (Dkt. 3, the "Amended Complaint").

## II.    Standard of Review

When considering a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. Jackson v. Okaloosa County, Fla., 21 F.3d 1532, 1534 (11th Cir. 1994). Furthermore the Court must limit its consideration to the complaint and written instruments attached as exhibits. Fed. R.Civ. P., 10 (c); GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir. 1993). A complaint must be dismissed pursuant to Fed.R.Civ.P 12 (b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations made in the complaint. Harrison v. Office of the State Courts Administrator, 2007 WL 1576351 (May 20, 2007, M.D. Fla.) (citing to Bell Atlantic Corp., 127 S.Ct. 1955 (2007)).

In general, courts disfavor motions to dismiss and only grant such motions in rare circumstances. See Gasper v. La. Stadium and Exposition Dist., 577 F.2d 897, 900 (5th Cir. 1978). Further, a motion to dismiss a complaint must be decided on questions of law and questions of law only. Kest v. Nathanson, 216 So.2d 233, 235 (Fla. 4th Dist. Ct. App. 1968).

## III. Analysis

Defendants argue that Counts II and II must be dismissed because they are based on violations of North Carolina law and under Section J of the Contract, Florida law controls.[1] Defendants further argue that Counts I and II must be dismissed because Plaintiff failed to make a demand for relief after each count, as required by Fla. R. Civ. Pro. 8.

Eason opposes the Motion on the grounds that 1) the protections provided by the wage and hour laws of North Carolina are outside of the ambit of the Contract and thus, cannot be precluded by a Florida choice of law provision in the Contract and 2) public policy supports his position. Eason also contends that Fed. R. Civ. Pro. 8(a)(3), contains no specific requirement that a demand for relief be made after each count.[2]

### Scope of the Choice of Law Provision

The parties do not dispute that Section J is a valid choice of law provision governing the Contract. The dispute here is over the scope of Section J. Defendants claim that all of Eason's causes of action arise out of the Contract and thus, the Contract's mandatory application of Florida

---

[1] The Motion actually reads that Plaintiff's claims are based on "Georgia statutes." (Dkt. 13, ¶ 11). The Court assumes that this reference is a mistake and the Defendants meant "North Carolina statutes."

[2] Defendants refer to the Federal Rules of Civil Procedure and Eason refers to the Florida Rules of Civil Procedure.

law precludes Eason from seeking any relief under North Carolina law. Eason claims that the Section J is limited to disputes specifically arising from the Contract and Counts II and III are based on violations outside of the Contract. The parties cite to case law to support their position. The Court finds Defendants arguments persuasive.

Florida courts are generally obligated to enforce choice of law provisions unless it is demonstrated that the law chosen contravenes public policy or that the clause is otherwise unreasonable or unjust. Mazzoni Farms, Inc. v. DuPont De Nemours & Co., 761 So.2d 306, 311 (Fla. 2000). In Florida, when contracting parties indicate in a contract their intention as to the governing law, any dispute under the contract will be governed by such law as long as it is not against Florida's public policy. Punzi v. Shaker Advertising Agency, Inc., 601 So.2d 599, 600 (Fla. 2d Dist. Ct. App. 1992). Courts do however read choice of law provisions narrowly. Green Leaf Nursery v. E.I. DuPont De Nemours and Co., 341 F.3d 1292, 1300 (11th Cir. 2003).

This is a simple breach of contract case. The Contract governs the employment relationship between Eason and Defendants. When the parties signed the contract, it was clear that Florida law would govern any disputes between the parties. Eason tacitly acknowledged this by filing his case in Federal Court in Florida. This is not a case in which there are multiple contracts governing the parties' relationship. If it were, the argument that Section J should be read narrowly to apply only to the Contract might have some merit. However, this is a one contract case in which Florida law clearly controls.

Public policy is not offended here because, Eason will be entitled to all of the protections offered to him by any applicable Florida laws. What offends public policy are Eason's creative attempts to use North Carolina statutes to reach beyond the now insolvent Contract Connection to

5

make Mr. and Mrs. Krohn personally responsible for the damages Eason is seeking. For these reasons, Defendants' request that Counts II and III of the Amended Complaint be dismissed will be **GRANTED**.

### Consolidated Request for Relief

Under either the Florida or Federal Rules of Civil Procedure, Eason's consolidated demand for relief following Count III is sufficient. Defendants' arguments on this point are not persuasive. Defendants' request that Counts I and II be dismissed for Eason's failure to demand specific relief following each count in the Amended Complaint will be **DENIED**.

## IV. Conclusion

For the reasons set forth in detail above, the Court finds that Defendants are entitled to the relief requested only as to Counts II and III. Accordingly, the Court **ORDERS** that the Motion (Dkt. 13) is **GRANTED in PART** and **DENIED in PART**. Counts II and III are **DISMISSED**. Eason has ten (10) days from the date of this Order to file an amended complaint.

**DONE and ORDERED** from Chambers in Jacksonville, Florida on this 4th day of February 2009.

Copies to:  Counsel of Record

JOHN H. MOORE II
United States District Judge